UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 14-20-DLB-EBA-5

UNITED STATES OF AMERICA                                                                   PLAINTIFF

VS.                            **MEMORANDUM ORDER**

ANTHONY COSCIA                                                                             DEFENDANT

\* \* \* \* \* \* \*

**I.    Introduction**

This matter is before the Court upon Defendant Anthony Coscia's motion for bond pending appeal (Doc. # 654).  The United States has filed its response in opposition to the motion (Doc. # 657).  Because of the expedited nature of the relief requested, the Court finds that a reply brief is not necessary.  For the reasons that follow, Defendant Coscia's motion is **denied**.

**II.   Legal Standard**

Pursuant to the Bail Reform Act, 18 U.S.C. § 3143(b)(1), the district court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and has filed an appeal or a petition for a writ of certiorari, be detained ...."  The court may, however, release the defendant on bond pending appeal if it makes two particular findings.  Defendant has the burden to establish, by clear and convincing evidence:

    (A)    that he is not likely to flee or pose a danger to the safety of another person or the community, *and*

    (B)    That the appeal is not for delay *and* raises a *substantial question of law or fact likely* to result in

        (i)    reversal,

        (ii)    an order for new trial

        (iii)    a sentence that does not include a term of imprisonment, or

        (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

(emphasis added).

This statute creates a presumption against release pending appeal. *United States v. Scherer*, 101 Fed. Appx. 1002, 1003 (6th Cir. 2004) (citing *United States v. Vance*, 851 F.2d 166, 168–69 (6th Cir.), *cert. denied*, 488 U.S. 893 (1988)). An appeal is deemed to raise a substantial question if the outcome is likely to "go either way and the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985).

**III.    Analysis**

With respect to section 3143(b)(1)(A), the Court finds that Defendant Anthony Coscia is not likely to flee, nor would his release pending appeal pose a risk to the community. Since being released on bond, he has substantially complied with the conditions of his bond, and has appeared for all necessary court appearances. As a result, the only contested issue is whether his appeal raises a substantial issue of law or fact under the Bail Reform Act.

Although Defendant Coscia has not yet filed his appellate brief with the Sixth Circuit Court of Appeals, based on the issues previously raised before this Court in his motion for new trial (Doc. # 372) and preserved for appeal, there are several possible issues which may be raised on appeal. He will likely challenge the sufficiency of the evidence presented at trial on the counts of which he was convicted. He may also argue that he made no false statements, and he owed no duty to anyone that would criminalize an omission. Rather, any duty fell on the corporate entity, not him individually. Second, he may challenge the Court's sentencing decisions, including the determination of actual loss for sentencing guideline purposes. Because any losses were owed by the consumers who purchased the cigarettes, as opposed to Mr. Coscia, he may challenge the court's loss calculation.

With respect to any sufficiency of the evidence challenge, the Court concludes that such an argument does not raise a substantial question of law or fact likely to result in reversal. More particularly, the government produced evidence at trial that Anthony Coscia drafted fabricated applications to merchant vendors so that the companies could utilize credit card payments, thereby facilitating the underlying wire fraud charges. In an e-mail to his other co-conspirators, he hoped that his skills could be utilized by the group to facilitate their scheme, and he swore loyalty to his fellow conspirators. Additionally, he claimed to be "cigarette girl's other half" – a reference to the website he and his now ex-wife Julie Coscia ran. Based on this and other evidence, the jury convicted Anthony Coscia of all counts with which he was charged. The Court will briefly review those counts and the evidence supporting them.

Count Three of the Indictment charged Anthony Coscia and others with conspiracy to commit mail fraud by selling and shipping untaxed domestic cigarettes. This count was

a pre-Prevent All Contraband Cigarette Trafficking ("PACT") Act fraud conspiracy. Pre-PACT Act, Defendants could ship cigarettes domestically; after the PACT Act was passed, Defendants had to rely on international suppliers to covertly ship the cigarettes to their customers. The government presented ample evidence that Anthony Coscia was aware of the nature of the business during the relevant time period. For example, in an e-mail dated January 25, 2009, Anthony Coscia asked another defendant how to set up a Checkredi portal so that he and his wife's website would be able to accept payments via personal check. In a separate, earlier e-mail, Anthony Coscia advised Defendants on how to create the most realistic fake applications to avoid detection. Based on this and other evidence, the jury was not unreasonable in convicting Defendant on Count Three.

Counts Six, Nine, and Ten of the Indictment charged Anthony Coscia and others with conspiracies to commit wire fraud related to the international importation and distribution of untaxed cigarettes. These charges were post-PACT Act and involved three separate international suppliers. Count Six related to shipments from Defendants Serov and Sergeev; Count Nine to shipments from Defendant Pak; and Count Ten to shipments from Defendant Weizman. The government produced evidence that the Coscia's company had significant involvement with all three international suppliers. Moreover, even if Anthony Coscia did not personally know or ever meet the international suppliers, the government was not required to prove that each co-conspirator knew all other co-conspirators. *See United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir. 1994) (citing *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)). Instead, the government only needed to show that there was an understanding to join and active participation in "some act or portion of the conspiracy." *Id.* at 1391-92 (citing *United States v. Lee*, 991 F.2d 343, 347-

48 (6th Cir. 1993)).  The evidence at trial demonstrated that Anthony Coscia knew that his former domestic suppliers were now receiving cigarettes from international shippers.  This, fact, coupled with his involvement with his and his wife's company, is sufficient to sustain the jury's verdict on those counts.

While the evidence at trial against Anthony Coscia was admittedly less than that presented against his wife or the other Defendants, being the least-culpable conspirator does not absolve one of criminal culpability.

Finally, counts Fourteen, Seventeen, and Eighteen of the Indictment charged Defendant and others with conspiracy to violate 18 U.S.C. § 1956(a)(2)(A), international promotional money laundering.  Section 1956(a)(2)(A) provides penalties for:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of a specified unlawful activity.

Defendant Anthony Coscia was charged with three separate conspiracies, each involving a different international supplier of untaxed cigarettes.  At trial, the government produced evidence of Anthony and Julie Coscia commingling their funds with funds from other domestic cigarette retailers, sending those funds to the overseas suppliers, and in return, the overseas suppliers sending shipments of cigarettes to the domestic Defendants' customers.

Promotional and concealment money laundering differ because the former does not require proof of secrecy, concealment, or any other intent to disguise.  *See United States v. Reed*, 264 F.3d 640, 650-52 (6th Cir. 2001).  The government need only show that Defendants transmitted funds to further or promote the underlying criminal activity.  *Id.*

Here, the government demonstrated that Anthony and Julie Coscia funneled proceeds from the underlying wire fraud back into the criminal enterprise by commingling their funds with the funds of other defendants. These funds were then transmitted to the international suppliers who shipped cigarettes to the domestic Defendant's customers. This conduct is no different than the defendant who pays his drug couriers for making deliveries. *See United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999) (upholding defendant's "promotion" money laundering conviction for wiring money to his drug couriers in payment for marijuana deliveries and for current expenses). Because the payments from the domestic defendants to the international suppliers encouraged further wire frauds, the convictions are proper. *Id.* (citing *United States v. Baker*, 63 F.3d 1478, 1494 (9th Cir. 1995)).

Money laundering charges can often present merger issues. These are more commonly seen with promotional money laundering charged under § 1956(a)(1)(A)(i). *See United States v. Santos*, 553 U.S. 507 (2008). Like § 1956(a)(1)(A)(i), § 1956(a)(2)(A) requires proof of intent to carry on the underlying criminal activity. This *mens rea* requirement is a stringent one, and it must be so to guard against the ever-present merger issues that often plague these charges. But Section 1956(a)(2)(A) differs from § 1956(a)(1)(A)(i) in two important ways, both of which help alleviate any potential merger problems. First, § 1956(a)(2)(A) does not require proof of proceeds. *See United States v. Moreland*, 622 F.3d 1147, 1167 (9th Cir. 2010). Thus, the proceeds-as-profits analysis that is often required to screen out merger problems is unnecessary.[1] Second, § 1956(a)(2)(A)

---

1) Even if this subsection of the statute required proof of proceeds, the government would not have to prove that they were "profits" rather than "receipts" under the *Santos-Kratt* Framework because there is no merger problem here. The underlying mail fraud conviction does not require proof of

requires an international element.  Money must either be sent to, from, or through a foreign country.  Here, the government satisfied its burden by demonstrating the transmission of funds overseas, and by proving that the Defendants intended to promote the wire fraud scheme by sending the money to the international suppliers.  Accordingly, Defendant Anthony Coscia's convictions for Counts Fourteen, Seventeen, and Eighteen are not against the manifest weight of the evidence.

Defendant Anthony Coscia may also argue that the proof during trial showed no overt activity by the Defendant in participating in the operation of the business or in the allegations of the offenses claimed.  (*See* Doc. # 372 at 1).  To the extent that Defendant is claiming that the government produced no evidence of an overt act, he is misguided.  The Supreme Court and the Sixth Circuit have made clear that no overt act is required to prove conspiracy under 18 U.S.C. §§ 1349 or 1956(h).  *See United States v. Rogers*, 769 F.3d 372, 389 (6th Cir. 2014) (conspiracy under § 1349 does not require proof of an overt act); *Whitfield v. United States*, 543 U.S. 209, 214 (2005) (conspiracy under § 1956(h) does not require the government to prove an overt act to obtain a conviction).

If this is not what Defendant means by "overt activity," then this ground has been previously rejected by the above-discussed section that detailed why there was sufficient

---

an international connection; the money laundering charge here does.  Additionally, the promotional money laundering charge requires the government to prove that the money was transmitted overseas with the intent to promote the carrying on of the underlying criminal activity.  Further, because the statutory maximum for conspiracy to commit mail and wire fraud under § 1349 is identical to that for conspiracy to commit money laundering under § 1956(h), any merger problem would not lead to a "radical increase in the statutory maximum sentence."  *See Jamieson v. United States*, 692 F.3d 435, 440 (6th Cir. 2012) (citing *United States v. Cosgrove*, 637 F.3d 646, 654-56 (6th Cir. 2011) (noting that the *Santos-Kratt* framework requires a three-part analysis: (1) is there a merger problem; (2) does the problem lead to a radical increase in the statutory maximum sentence; and (3) does the legislative history show that Congress intended the increase? If the answer to any question is no, "proceeds" means "gross receipts.")).

7

evidence to convict Defendant. The government produced evidence of Defendant communicating with co-conspirators about how to properly draft fabricated documents. The government also produced e-mails in which Defendant stated that he hoped he could be helpful to his co-conspirators and in which he professed his loyalty to them. As previously mentioned, this and other evidence supported Defendant's convictions.

Any argument that he made no false statements, and owed no duty to anyone that would criminalize an omission would likely be rejected on appeal. (*See* Doc. # 656, Order denying co-defendant Carman's motion for bond pending appeal). The same can be said for any challenges to the Court's loss calculation. *Id.* For the reasons set forth in the Court's August 23, 2016 Memorandum Opinion and Order (Doc. # 514), the Court cannot conclude that the appeal raises sentencing guideline determinations which raise a substantial question of law or fact likely to result in a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

More specifically, the Court concluded that the unpaid excise taxes were properly construed as actual losses to the various government entities for guideline purposes. In so concluding, the Court relied upon the Sixth Circuit's decision in *United States v. Wendladt*. 714 F.3d 388 (6th Cir. 2013). The Sixth Circuit relied upon *Wendladt* in denying Carman's motion. (See Doc. # 656 at 4). Alternatively, even if the Court concluded that the actual loss calculation raises a substantial question of law that may result in a reversal for re-sentencing, the Court cannot conclude that any such reversal would likely result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process pursuant to 18 U.S.C. § 3143(b)(1)(B)(iv).

The Court already varied substantially from the advisory guideline range and would not likely vary any further. For these reasons, any sentencing issues likely to be raised on appeal do not warrant bond pending appeal.

### IV.     Conclusion

For all of these reasons,

**IT IS ORDERED** that Defendant Anthony Coscia's motion for bond pending appeal (Doc. # 654) is **DENIED**. He shall report for service of his sentence to the institution designated by the Bureau of Prisons **not later than 2:00 p.m. on Tuesday, February 20, 2017**.

This 16th day of January, 2017.



K:\DATA\ORDERS\Ashland Criminal\2014\Maddux orders\14-20-4 - Order denying DE 654.wpd